HORNE, Respondent, vs. KENOSHA LINCOLN-MERCURY, INC., Appellant.

*December 3—December 30, 1953.*

For the appellant there was a brief and oral argument by *Earle Munger* of Kenosha.

For the respondent there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

MARTIN, J.   The first question presented is whether there is sufficient evidence to support the jury's finding that a

contract existed between the parties whereby plaintiff was to receive a three per cent commission on the gross parts sales.

As pointed out by the learned trial court, the testimony is in sharp conflict and the jury had the right to believe either party. Plaintiff testified that such an agreement had been reached on the day he was hired. His testimony that by its terms three per cent on gross parts sales was payable annually was corroborated by Wassick. The testimony of Mr. Clausen, secretary-treasurer of the defendant company, is somewhat inconsistent: He denied that any contract for commissions had ever existed, but he admitted that a commission would have been payable had a certain quota been met. The jury believed the testimony of the plaintiff, which it was entitled to do, and its answer to the question submitted in the special verdict must be sustained.

Defendant also contends on this appeal that if there was any agreement between the parties, it was void under the statute of frauds, sec. 241.02, Stats.:

"In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith:

"(1) Every agreement that by its terms is not to be performed within one year from the making thereof."

This contention was raised for the first time on motions after verdict, and answered by the trial court. It is argued that according to plaintiff's testimony commissions were to be paid annually, and that therefore, under the rule of *Brown v. Oneida Knitting Mills* (1938), 226 Wis. 662, 277 N. W. 653, and similar cases, the commissions were to be paid at the end of one year from plaintiff's first day of employment.

Plaintiff's employment began September 19, 1949, and the defendant's fiscal year ended in August, 1950. After

August, 1950, when plaintiff demanded his commissions, Clausen put him off, not for the reason that the "annual" payment was not due, but because the auditors had not finished with the books. On various occasions thereafter when plaintiff demanded commissions, Clausen made other excuses for not paying him, but on no such occasion did he deny that commissions were due.

Webster defines "annual" as "occurring once each year; yearly." In applying this ordinary and approved meaning of the word to the evidence presented in the record, the trial court had the right to conclude that commissions were payable at the end of the fiscal year, which was within one year from the date when the parties entered into their agreement.

*By the Court.*—Judgment affirmed.

Gehl, J. (*dissenting*). I am in complete accord with the majority in their conclusion that there is ample support for the jury's answer to the question which was submitted. I am unable to agree however that there is support for the trial judge's determination that the agreement, which the jury found to have been made, could have been performed on the part of the defendant within one year from its date. Plaintiff testified:

"*Q.* Did he [Mr. Clausen] state [on September 18, 1949] whether or not when the commission would be payable? *A.* He told me it would be annually."

This testimony can be given but one construction—that plaintiff was to be paid after a year of service which commenced on September 19, 1949. The contract is within the statute of frauds and void. *Chase v. Hinkley,* 126 Wis. 75, 105 N. W. 230.

But the trial judge concluded and the majority agree that the testimony discloses that the commission was to be payable at the end of the fiscal year, a date within the year

following the date of the contract. If that was the understanding it must appear from plaintiff's testimony. No one else testified upon that issue. In fact defendant denied that any agreement for the payment of commissions was ever made. He gave the following testimony:

"*Q*. Now, until the first year went by you had no occasion to talk to Mr. Clausen about your commission? *A*. That's right."

There he discloses by his own testimony that he himself did not consider that he was to be paid until the end of the year.

Following the foregoing he testified:

"*Q*. Did you ask him later on again? *A*. Yes, I mentioned it to him when I figured the auditors had the books posted and he told me that the inventory was off and he would have to take another.

"*Q*. Did you take another inventory? *A*. Yes.

"*Q*. About when was that? *A*. The fiscal year ended in August . . . 1950."

I am unable to read out of the last-quoted testimony (which is all there is in the record which bears upon the subject) any suggestion that (1) the discussion was had before the end of plaintiff's first year of service, (2) that at the time plaintiff was employed it was understood that he was to be paid before September 19, 1950, more than one year after the date of the contract, (3) the reference to "fiscal year" indicates that it was originally agreed that plaintiff was to be paid at the close of defendant's fiscal year; it is no more than a statement that he understood that the inventory was to be taken at that time.